UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 8134 |
| ) | |
| CITY OF CHICAGO, a municipal corporation; ) | Judge John W. Darrah |
| OFFICER DUANE BLACKMAN, Star Number 13615; ) | |
| and LISA MADIGAN, Illinois Attorney General, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Arthur Brown, filed suit against Defendants, City of Chicago and Chicago Police Officer Duane Blackman (collectively, the "City Defendants") and the Illinois Attorney General Lisa Madigan, (the "State Defendant").[1] Plaintiff Brown brought a six-count Complaint. Count I alleges excessive force, arising from an incident on April 12, 2001, in which Plaintiff was shot. Count II alleges that he was falsely arrested in violation of the Fourth Amendment. Count IV alleges failure to train, control, or discipline. Count V seeks compensatory damages for alleged violation of ILCS 10/9-102. Count VI seeks injunctive relief for alleged deprivation of due process. Currently pending before the Court are two motions to dismiss: one filed on behalf of Lisa Madigan, the Illinois Attorney General, and the second filed by Officer Duane Blackman and the City of Chicago.

---

[1] Plaintiff also named two Defendants: Roger E. Walker (the Director of the Illinois Department of Corrections) and the State of Illinois. On May 8, 2006, Plaintiff filed a Motion to Dismiss the State of Illinois, Roger Walker, and the Conspiracy Count [Count III] from Plaintiff's First Amended Complaint. This motion is granted.

1

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## FACTS

The following allegations, taken as true for purposes of deciding Defendants' motions, are taken from Plaintiff's Amended Complaint. On April 12, 2001, at the block of 4300 West Madison Avenue, in Chicago, Illinois, Defendant Blackman and his partner, Aaron Long, approached Plaintiff. Both Blackman and Long were on duty as Chicago Police Officers and were each carrying firearms.

Blackman and Long did not witness Plaintiff commit any violation of any local, state or federal law and had no warrant for his arrest. Blackman shot at Plaintiff, who had his back toward Blackman five times, hitting him once in the back of the head, once in the back left calf, and once in the back of his right arm, outside of the Spin Cycle Laundromat at the corner of Madison and Kildare in Chicago. Plaintiff collapsed face down in the street. Clothing worn by

Plaintiff on the day of the shooting and inventoried by the Chicago police had a gunshot hole in the back, left calf of Plaintiff's jeans, which were covered in blood; and the right sleeve of Plaintiff's jacket was cut off by paramedics. Bullet fragments are lodged in Plaintiff's skull and will remain there for the rest of his life.

Plaintiff asserts that Officer Long did not witness the shooting, although Long indicated in numerous police reports that he saw Plaintiff point a weapon at his partner, Defendant Blackman.

Plaintiff asserts that he did not carry, brandish, or point any weapon, including the black, Berretta Centurian 9 mm handgun, bearing the serial number BER459199Z, the police alleged he possessed. Plaintiff asserts that in order to cover up Blackman's shooting and to justify his unreasonable use of deadly force, Defendant Blackman thereafter planted a Berretta Centurian 9 mm handgun on Plaintiff and thereafter falsely accused Plaintiff of pointing this weapon at him.

After the shooting, Plaintiff was arrested and rushed by ambulance to Mt. Sinai Hospital at 15th and California in Chicago. Plaintiff remained in critical condition, near death, under police arrest and in police custody. Plaintiff survived, but the shooting caused severe physical and emotional injuries.

The gun that Blackman and Long alleged to prosecutors was possessed by Plaintiff was, according to Plaintiff, owned by fellow Chicago Police Officer Rickey Fobbs. Plaintiff alleges that Fobbs falsely reported to police that the gun, bearing the serial number BER459199Z, was stolen from him in a 1998 robbery. Plaintiff asserts that the weapon was "planted" on Plaintiff by Blackman, with the full knowledge of Long and Fobbs. Plaintiff alleges that Fobbs gave

3

Blackman and/or Long this weapon specifically to use as a "drop gun," knowing it could be used to cover up the unlawful and unreasonable use of excessive force by the police.

Plaintiff claims prior to July 30, 1998, and prior to April 12, 2001, the City of Chicago was put on notice that Blackman, Long and Fobbs had a known history of the repeated use of excessive force against citizens and for covering up the excessive use of force by themselves and others. Plaintiff asserts that the City took no actions to properly control or discipline the officers. According to Plaintiff, this police code of silence dictates that members of the Chicago Police Department, with the approval of supervising officers, turn a blind eye to blatant Constitutional violations; and, therefore, they fail to intervene, knowing the failure to do so will result in the deprivation of the Constitutional rights of arrestees. Plaintiff asserts that this code of silence, approved by all the Defendants in this case and known and approved by the City of Chicago, through its highest supervisory agents and officers, constituted deliberate indifference to Plaintiff's right to be free from the excessive use of force.

Plaintiff asserts that in a further attempt to cover up their excessive use of force, Blackman, Long, and Fobbs, at pre-trial hearings and at Plaintiff's trial, all testified falsely, under oath, that Fobbs did not give Blackman and/or Long the aforementioned weapon for use as a "drop gun."

Plaintiff was charged by indictment with aggravated unlawful use of a weapon, unlawful use of a weapon by a felon, and felony aggravated assault. Plaintiff entered a plea of not guilty and was tried before a jury in the Circuit Court of Cook County and was found guilty on all counts. Prior to sentencing, the state court merged the two weapon charges; and on July 18, 2003, Judge Suria sentenced the Petitioner to four years in the Illinois Department of

Corrections on the Class 2 unlawful use of weapons charge and to three years in the Illinois Department of Corrections on the Class 4 aggravated assault charge.

Plaintiff appealed his conviction to the Illinois Appellate Court, First District, in Chicago, Illinois. In that appeal, Plaintiff made the following claims: (1) the court erred in denying Plaintiff's Sixth and Fourteenth Amendment confrontational and due process rights to confront witnesses against him and to present a defense; (2) the judge denied the Petitioner his Fifth and Fourteenth Amendment rights to due process and a fair trial when he told jurors, *sua sponte*, that the Petitioner filed a federal civil rights case, which prompted the Chicago Police Department to reinitiate an investigation, which was earlier ruled justified; (3) the court erred in permitting the introduction of medical testimony that was unreliable and incompetent; (4) the Court violated the Petitioner's Fifth and Fourteenth Amendment rights to due process and a fair trial in giving an erroneous jury instruction that relieved the State of its duty to prove, beyond a reasonable doubt, that the Petitioner used a firearm in the commission of the offense of aggravated assault; and (5) the Petitioner was denied his Fifth and Fourteenth Amendment rights to due process and a fair trial when an assistant state's attorney commented in closing argument that the defense was presenting its case so "they" could "cash in" with the City of Chicago by filing a federal civil rights claim.

On March 25, 2005, the Illinois Appellate Court, in an unpublished Order, affirmed Plaintiff's conviction. Plaintiff appealed the appellate court's ruling to the Illinois Supreme Court; and on September 29, 2005, the Court denied the Petitioner's leave to appeal. The Petitioner did not file a *writ of certiorari* to the United States Supreme Court. On July 22, 2005, Plaintiff was discharged from his parole.

5

Plaintiff asserts that the state court erred by denying Plaintiff's Sixth and Fourteenth Amendment due process and confrontation rights. Specifically, Plaintiff alleges that the court erred by not allowing the defense to cross-examine Officer Fobbs concerning his claim that the gun was registered to him. The State called Fobbs as a rebuttal witness to claim that this gun was stolen from him in a 1998 armed robbery by unknown black males and that he filed a police report confirming this. Plaintiff asserts that he had witnesses prepared to testify that Fobbs' robbery claim was actually a ruse to cover up an illicit shooting that he took part in with his self-admitted "friend," gang member Tobias Moore. At trial, Plaintiff presented independent, eyewitness testimony, as well as medical testimony, to support Plaintiff's claim that he was running away from Officer Blackman when Blackman shot him three times, once in the back of the head, once in the back of his right arm, and once in his left leg, and that, afterward, Officer Blackman "dropped" Fobbs' weapon on Plaintiff to justify Blackman's unreasonable shooting of Plaintiff. Plaintiff alleges that he was denied the right to cross-examine Fobbs and that this devastated Plaintiff's defense. Moreover, Plaintiff alleges that the court erred in not allowing the defense to introduce eyewitness testimony and videotape evidence that showed Officer Blackman and Officer Long (who also testified against Plaintiff) switched price tags at Sak's Fifth Avenue on December 24, 2002, while on duty. This resulted in the loss of police authority for both officers. Plaintiff asserts that these alleged errors denied Plaintiff his right to a fair trial, to present a defense, and to confront witnesses against him, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts that the trial court denied Plaintiff his Fifth and Fourteenth Amendment due process rights to a fair trial regarding his statements to the jury. The court violated Plaintiff's Fifth and Fourteenth

6

Amendment due process rights in giving an erroneous jury instruction that relieved the State of its duty to prove, beyond a reasonable doubt, that Plaintiff used a firearm in the commission of the offense of aggravated assault. Plaintiff alleges he was denied his Fifth and Fourteenth Amendment due process rights to a fair trial when an assistant state's attorney commented in closing argument that the defense was presenting its case so "they" could "cash in" with the City of Chicago by filing a federal civil rights claim.

## ANALYSIS

### *Heck Doctrine: Counts I and II*

Plaintiff need only " 'plead claims' (which is to say, grievances) rather than legal theories and factual specifics." *Simpson v. Nickel*, 450 F.3d 303, 305 -306 (7th Cir. 2006) (*Simpson*). There is no heightened pleading requirements for suits brought under 42 U.S.C. § 1983. *Simpson*, 450 F.3d at 306. Here, Plaintiff's claim was stated sufficiently to put Defendants on notice, which is all that is required at the pleading stage. Thus, Defendants' Motion to Dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

The Defendants also assert that Plaintiff's claims are barred by the *Heck* doctrine. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (*Heck*). The Defendants are mistaken because *Heck* "concern[s] the allocation between collateral review and damages actions as a matter of federal law" and, thus, "have no application when collateral review is unavailable – either because the plaintiff's custody has expired or because he was never 'in custody' as a result of the [D]efendants' contested actions." *Simpson*, 450 F.3d at 306-07.[2]

---

[2] Plaintiff sought leave to file additional authority in opposition to the motion to dismiss after the June 12, 2006 ruling in *Simpson*, 450 F.3d 303. The Defendants did not seek to file a sur-reply.

7

In *Heck*, the Supreme Court held that when a state prisoner seeks damages in a Section 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. *Heck* dealt with the "intersection of the two most fertile sources of federal-court prisoner litigation" — the basic federal civil rights statute, 42 U.S.C. § 1983, and the federal *habeas corpus* statute for state prisoners, 28 U.S.C. § 2254. *Heck*, 512 U.S. at 480. Plaintiff contends that *Heck's* "favorable termination" rule does not bar his action because either (1) *Heck* does not apply to suits brought by persons no longer "in custody," or (2) his suit does not "necessarily imply" the invalidity of his continuing confinement.

The Supreme Court in *Heck* clearly favored using the more specific *habeas* statute to challenge the legality of state-court convictions while the petitioner was in custody. *Heck*, 512 U.S. at 512. In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court explained that *Heck*'s favorable termination rule "served the practical objective of preserving limitations on the availability of *habeas* remedies. Federal petitions for *habeas corpus* may be granted only after other avenues of relief have been exhausted. Prisoners suing under § 1983, in contrast, generally face a substantially lower gate." *Id.* at 751 (citations omitted). Thus, as a general rule, incarcerated plaintiffs are required to bring their action under the *habeas* statute rather than the civil rights statute.

However, here, Plaintiff cannot bring a *habeas* action because Plaintiff's *habeas* petition was dismissed on April 27, 2006, by this Court because Plaintiff was not then presently in the custody of the Illinois Department of Corrections or under mandatory supervised release.

*Brown v. City of Chicago*, 05 C 7234 (N.D. Ill. Apr. 27, 2006) ("Brown [Plaintiff] is not 'in custody' for purposes of his *habeas corpus* petition."). Therefore, the central issue is whether Section 1983 actions should be available to former prisoners, who cannot avail themselves of the *habeas* remedy, or whether such actions are barred by the *Heck* doctrine.

In *Heck*, Justice Souter wrote a concurring opinion, which was joined by Justices Blackmun, Stevens, and O'Connor, noting that there should be an exception made for former prisoners who cannot avail themselves of the *habeas* statute. Justice Souter wrote:

> If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason, of course, is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

*Heck*, 512 U.S. at 500 (Souter, J., concurring). Ultimately, Justice Souter's views carried the majority of the Court in *Spencer v. Kemma*, 523 U.S. 1 (1998) (*Spencer*). In *Spencer*, the Court considered whether a person who was no longer "in custody" but was "in custody" when a *habeas* petition was filed may maintain the *habeas* suit in order to meet the favorable termination requirement imposed by *Heck*. Eight members of the Court held that the *habeas* petition was properly dismissed as moot because there was no longer a case or controversy before the Court. *Spencer*, 523 U.S. at 14-19. However, a majority of the Court noted that Section 1983 may be available to individuals who are not "in custody": Justices Souter and O'Connor reiterated that

9

they held the same position that they held in *Heck* (i.e., that Section 1983 may be available where a former prisoner cannot challenge his conviction in a *habeas* action), *Spencer*, 523 U.S. at 18-19; Justice Ginsburg wrote separately to indicate that she changed her view that she took in *Heck* and now came to agree with Justices Souter and O'Connor that Section 1983 should be available to individuals without recourse to the *habeas* statute because they are not "in custody," *Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring); Justice Breyer, who replaced Justice Blackmun on the Court, joined Justice Souter's concurrence, *Spencer*, 523 U.S. at 18-19; and Justice Stevens, in dissent, noted that he continued to agree with Justice Souter's view that in certain cases, Section 1983 relief should be available, *Spencer*, 523 U.S. at 25 n.8 (Stevens, J., dissenting) ("Given the Court's holding that petitioner does not have a remedy under the *habeas* statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. § 1983.").

The Seventh Circuit wrote in *Dewalt v. Carter*, 224 F.3d 607 (7th Cir. 1999) (*Dewalt*), following the opinion in *Spencer*, "We . . . are hesitant to apply the *Heck* rule in such a way that would contravene the pronouncement of five sitting Justices . . . . The concurring and dissenting opinions in *Spencer* reveal that five Justices now hold the view that a § 1983 action must be available to challenge the constitutional wrongs where federal *habeas* is not available." *Dewalt*, 224 F.3d at 616-17. In *Dewalt*, a prisoner filed a Section 1983 damages complaint in federal court against five individuals employed by the Dixon Correctional Center for engaging in racially motivated conspiracy to get him fired from a prison job, retaliation for filing a grievance, and the use of excessive force. *Dewalt*, 224 F.3d at 609. The court reversed the dismissal of the Section 1983 complaint. *See also*, *Simpson*, 450 F.3d at 306-07 (reasoning that the *Heck* doctrine "has no application when collateral review is unavailable either because the plaintiff's custody has

10

expired or because he was never 'in custody' as a result of the defendant's contested actions."). Thus, because Plaintiff is no longer in custody and, therefore, cannot pursue the *habeas* action, Plaintiff can pursue his Section 1983 claims. For the foregoing reasons, the Defendants' motion to dismiss Count I and Count II pursuant to the *Heck* doctrine is denied.

*Rooker-Feldman Doctrine: Counts I and II*

The State Defendant asserts that the *Rooker-Feldman* doctrine bars jurisdiction over claims in Counts I and II. The *Rooker-Feldman* doctrine precludes federal district court jurisdiction over claims that seek review of state-court judgments or over claims "inextricably intertwined" with state-court determinations, absent Congressional authorization. *Remer v. Burlington Area School District*, 205 F.3d 990, 996 (7th Cir. 2000); *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 701-02 (7th Cir. 1998); *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 n8 (2005) ("Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal *habeas* review of state prisoners' petitions. 28 U.S.C. § 2254(a)."). The State Defendant asserts that because Plaintiff could have, and did, raise the issues of perjury, excessive force, and reversible error during the criminal trial, allowing Plaintiff to proceed in this Section 1983 claim would circumvent the *Rooker-Feldman* doctrine. Thus, the question is whether, after *Spencer,* this Court lacks subject-matter jurisdiction to entertain Plaintiff's Section 1983 claim challenging a state-court conviction under Section 1983 or whether Congress granted this Court jurisdiction to hear claims of former inmates who are no longer "in custody" and do not have the right to *habeas* relief.

11

For the reasons discussed more fully above, it is clear that a majority of the Supreme Court as well as the Seventh Circuit have explicitly found that Congress intended to allow former inmates who are no longer in custody, such as Plaintiff, to challenge their convictions in federal court. Therefore, the Court has subject-matter jurisdiction over Plaintiff's Amended Complaint; the motion to dismiss based on the *Rooker-Feldman* doctrine is denied.

*The Monell and Respondeat Superior Claims: Counts IV and V as to the City of Chicago*

The City Defendants argue that if the Court dismisses Counts I and II, it must dismiss Counts IV and V because they are derivative. If a plaintiff cannot provide that an individual defendant caused him to suffer a constitutional injury, plaintiff cannot succeed on a *Monell* claim. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If [plaintiffs] are unsuccessful in their claims against the individual defendants, they will no longer have a cause of action against the city."). However, because the motions to dismiss Counts I and II are denied, there remain claims against Defendant Blackman; and the motion to dismiss Counts IV and V on this basis is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss are denied.

Dated: 11-9-06

JOHN W. DARRAH
United States District Court Judge

12