UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 8134 |
| ) | |
| CITY OF CHICAGO, a municipal corporation; ) | Judge John W. Darrah |
| OFFICER DUANE BLACKMAN; ) | |
| and LISA MADIGAN, Illinois Attorney General, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Arthur Brown, who was convicted of several crimes related to the possession and use of a firearm, brings this action under 42 U.S.C. § 1983 against Defendants, Chicago Police Officer Duane Blackman, the City of Chicago and Illinois Attorney General Lisa Madigan. Plaintiff and Defendant Madigan have both moved for summary judgment on Count VI of Plaintiff's First-Amended Complaint, in which Plaintiff seeks injunctive relief against Defendant Madigan; specifically, Plaintiff seeks (1) a hearing to determine whether his conviction was obtained in a way that deprived him of his federal Constitutional rights and (2) a court order reversing his convictions.

## BACKGROUND

On April 12, 2001, two Chicago Police Officers, Defendant Duane Blackman and Aaron Long, were on duty and dressed in plain clothes in the area of the 4300 block of West Madison Avenue. The officers saw two men who they believed were selling drugs. When

the officers approached the men and identified themselves as police, the men fled. Defendant Blackman chased one of the men into a parking lot, where he encountered Plaintiff.

The parties disagree as to what happened next. Defendant Blackman claims that Plaintiff pointed a gun at him and would not drop the weapon when ordered to do so. According to Defendant Blackman, Blackman fired his weapon at Plaintiff, causing Plaintiff to stagger backwards, eventually falling to the ground. Plaintiff claims that he was unarmed at the time he encountered Blackman and that he was running away from Blackman when Blackman fired five shots at Plaintiff, hitting Plaintiff three times – once in the back of the head, once in the back of the right arm and once in the back of the left leg.

Plaintiff was charged with aggravated unlawful use of a weapon, unlawful use of a weapon by a felon and felony aggravated assault. Plaintiff was tried before a jury, found guilty on all counts and sentenced to four years in the Illinois Department of Corrections. Plaintiff appealed his conviction to the Illinois Appellate Court, arguing several grounds overturning his convictions. Plaintiff argued: (1) the trial court deprived him of his right to cross-examine a prosecution witness and to put on a full and fair defense, and (2) Plaintiff was denied a fair trial because the prosecutor twice commented that the defense was merely trying to cash in by filing a federal lawsuit against the city.[1]

Plaintiff's first argument, that he was denied his right to cross-examine a prosecution witness and put on a full and fair defense, centers on Plaintiff's contention that he was not armed when he encountered Defendant Blackman. Plaintiff argues that the gun police claim to have

---

[1] Plaintiff raised other errors during his appeal, but Plaintiff does not cite them here as grounds for seeking a reversal of his conviction.

2

found on him after he was shot was a "drop gun," placed on him by Defendant Blackman to cover up Blackman's unjustified shooting of Plaintiff. In support of his theory, Plaintiff offered evidence at trial that the gun he was accused of possessing was registered to Chicago Police Officer Ricardo Fobbs. The prosecution called Fobbs as a rebuttal witness, and Fobbs testified that the gun in question was stolen from him in 1998. Plaintiff sought to cross-examine Fobbs on this point, but was prohibited from doing so by the trial judge. Plaintiff made an offer of proof, focusing on the police report detailing the 1998 theft. Plaintiff pointed out inconsistencies between Fobbs' story to police and the physical evidence and argued that Fobbs had a motive to lie to police about his gun's being stolen. The court refused to allow the defense to present this evidence to the jury because Plaintiff had not shown a nexus between Fobbs and Defendant Blackman. The court held that because the officers testified that they did not know each other, there were insufficient grounds to find that Fobbs could have given the gun to Blackman.

On March 25, 2005, the Illinois Appellate Court affirmed Plaintiff's conviction. The court upheld the trial court's ruling based on the lack of nexus between officers Fobbs and Blackman and held that the prosecutor's comments to the jury about Plaintiff's seeking to cash in, though improper, were harmless error. On September 29, 2005, the Illinois Supreme Court denied Plaintiff leave to appeal. Plaintiff then petitioned for a writ of *habeas corpus*. That petition was dismissed because Plaintiff had been discharged from his parole on July 22, 2005, and was, therefore, no longer in custody.

On December 16, 2004, Plaintiff brought this case against the City of Chicago, Defendant Blackman and two other officers of the Chicago Police Department, seeking damages under § 1983. In October 2005, Plaintiff's motion to dismiss the two other officer Defendants was

3

granted. On March 18, 2006, Plaintiff filed his First-Amended Complaint. In Count VI of the First-AmendedComplaint, Plaintiff seeks injunctive relief against newly added Defendant Madigan; specifically Plaintiff seeks an order reversing his conviction in Illinois State Court. Plaintiff does not seek damages against Defendant Madigan, only injunctive relief. Defendant Madigan now moves for summary judgment on Count VI of the First-Amended Complaint.

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 (c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Liberty Lobby, Inc.*); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-

moving party's favor. *Celotex*, 477 U.S. at 322-27; *Liberty Lobby, Inc.*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

**ANALYSIS**

The threshold issue in this case is whether the injunctive relief Plaintiff seeks against Defendant Madigan in Count VI is available to him under § 1983. Plaintiff seeks "a hearing, orally and/or via written submissions, to determine whether Plaintiff was prosecuted . . . in a manner that deprived the Plaintiff of his federal Constitutional rights" and "an Order of this Court reversing his conviction." More specifically, the issue is whether the Plaintiff (who has been convicted in state court but, by virtue of being released from custody, is no longer able to maintain a *habeas* action) can use § 1983 to collaterally attack his conviction.

The Court of Appeals for the Seventh Circuit has addressed this issue directly, albeit nearly three decades ago, in *Hanson v. Circuit Court of the First Judicial Circuit of Illinois*, 591 F.2d 404 (7th Cir. 1979) (*Hanson*). In *Hanson*, the court held that § 1983 could not be used to challenge state-court judgment of conviction: "Congress intended that habeas corpus provide not only the exclusive federal remedy for those in custody, but also the exclusive federal remedy for all who seek to attack state court judgments of convictions. Thus, convictions not subject to question in habeas are immune from collateral inquiry by the federal courts." *Hanson*, 591 F.2d at 410. A year later, the Court of Appeals reaffirmed the *Hanson* rule and held that it applied to corporations as well as to natural persons. *See Waste Management of Wisconsin, Inc. v. Fokakis*, 614 F.2d 138 (7th Cir. 1980) (*Fokakis*). A recent unpublished opinion of the Court of Appeals indicates that the law in this area has not changed. *See Corcoran v. Bucher*, 2002 WL 1732626

5

(7th Cir. 2002) (plaintiff who was no longer in custody could not use § 1983 to collaterally attack his state-court conviction) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

Plaintiff argues that recent decisions by the United States Supreme Court and the Seventh Circuit that carve out an exception to the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (*Heck*), lead to the conclusion that Plaintiff may bring a § 1983 suit to overturn his conviction. In *Heck*, the Court held that a § 1983 claim of a state prisoner that would necessarily imply the invalidity of the prisoner's conviction could not proceed until the conviction had been invalidated. This invalidation could occur either through a state procedure, such as reversal on direct appeal, or through a successful *habeas* action. Since *Heck*, other cases have suggested that this bar on § 1983 actions does not apply if the plaintiff is not in state custody and, thus, cannot challenge his conviction through *habeas*. *See Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006) (*Heck* rule does not apply where collateral review is unavailable); *DeWalt v. Carter*, 224 F.3d 607, 616-18 (7th Cir. 1999) (§ 1983 action for compensation and punitive damages should be allowed to proceed when *habeas* relief is not available).

Based on these precedents, § 1983 claims for damages have been allowed to proceed, even though success for the plaintiff would necessarily imply the invalidity of his conviction. However, here, Plaintiff's § 1983 claim seeking an order reversing his conviction is a different matter. The cases cited as establishing an exception to *Heck*, as well as *Heck* itself, are inapplicable to the injunctive relief Plaintiff seeks here. *Heck* and the subsequent related cases dealt with the effect of a conviction on a § 1983 claim for damages that would necessarily imply the invalidity of the conviction. That issue is distinct from whether a direct attack on the validity of a conviction, seeking the reversal of that conviction, is a cognizable claim under § 1983. In

6

other words, it is not the *Heck* rule that bars Plaintiff's direct § 1983 challenge here to his state-law conviction. Rather, as noted above, the Court of Appeals for the Seventh Circuit has expressly ruled that a plaintiff may not challenge a state-law conviction by means of a § 1983 action. *See Hanson*, 591 F.2d at 410. This Court is aware of no case to the contrary.

## CONCLUSION

For the reasons stated above, Defendant Madigan's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.

Dated: February 5, 2008

JOHN W. DARRAH
United States District Court Judge