UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ARTHUR BROWN, | ) |
|---|---|
| Plaintiff, | ) |
| | ) No. 04 C 8134 |
| v. | ) |
| | ) Judge John W. Darrah |
| CITY OF CHICAGO, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Arthur Brown, brought suit pursuant to 42 U.S.C. § 1983 against the City of Chicago, several Chicago Police Officers and Illinois Attorney General Lisa Madigan. Before the Court is Defendant Officer Duane Blackman's motion for summary judgment on Brown's claim for excessive force (Count I), the last remaining count in this case.

## BACKGROUND

This case stems from an April 12, 2001 incident during which Brown allegedly pointed a gun at Officer Blackman before he was shot and then arrested by Blackman. (Plaintiff's 56.1(a)(3) at ¶¶ 7, 24.)[1] Brown was charged with aggravated unlawful use of a weapon, unlawful use of a weapon by a felon, and felony assault. (Plaintiff's 56.1(a)(3) at ¶ 1, Defendant's 56.1(a)(3) at ¶ 6.)

At Brown's trial, the defense intended to advance the theory that Brown had been unarmed at the time of the shooting and that Blackman had planted the gun on Brown after shooting him. (Plaintiff's 56.1(a)(3) at ¶ 11.) The gun allegedly possessed by Brown had been

---

[1]A more detailed description of the incident as described by both sides can be found in the Court's opinions of November 9, 2006, denying Defendants' motions to dismiss, and of February 5, 2008, granting Defendant Madigan's motion for summary judgment.

purchased by Chicago Police Officer Rickey Fobbs in 1996. (Plaintiff's 56.1(a)(3) at ¶¶ 7, 70.) At trial, the parties stipulated that, if called to the stand, Chicago Police Officer Bernard Kelly would testify that the gun allegedly possessed by Brown, according to the Bureau of Alcohol, Tobacco and Firearms National Tracing Center, was purchased by Officer Fobbs on July 26, 1996. (Plaintiff's 56.1(a)(3) at ¶ 61.) The parties also stipulated that Officer Kelly would testify that a check of the City of Chicago gun desk revealed that the gun was registered to Officer Fobbs. (Plaintiff's 56.1(a)(3) at ¶ 62.)

The State called Officer Fobbs as a rebuttal witness. (Plaintiff's 56.1(a)(3) at ¶ 69.) Officer Fobbs testified that the gun in question had been stolen from him on July 30, 1998. (Plaintiff's 56.1(a)(3) at ¶ 71.) The defense sought to cross-examine Officer Fobbs regarding the circumstances of the alleged theft of the gun. (Plaintiff's 56.1(a)(3) at ¶ 72.) However, the court barred defense counsel from inquiring about the details of the incident, ruling that there was no nexus between Officers Blackman and Fobbs. (Plaintiff's 56.1(a)(3) at ¶ 72.)

Had the defense been permitted to introduce evidence and cross-examine Officer Fobbs regarding the theft of the gun, they would have attempted to show that Fobbs' gun was not actually stolen in 1998. (Plaintiff's 56.1(a)(3) at ¶¶ 9-12.) Rather, the defense's theory was that Officer Fobbs and his friend, Tobias Moore, a convicted felon and gang member, were involved in an off-duty shoot-out and a high-speed chase on the day that the gun was purportedly stolen. (Plaintiff's 56.1(a)(3) at ¶ 11.) The defense intended to introduce evidence that Chicago Police found shell casings near where Fobbs and Moore had parked their cars and blood and bullet holes in the abandoned vehicle of the alleged robbers, even though both Fobbs and Moore denied firing their weapons. (Plaintiff's 56.1(a)(3) at ¶ 10.) The defense intended to argue that Fobbs

2

reported that his gun had been stolen in order to cover up the fact that he had fired his gun during the incident. (Plaintiff's 56.1(a)(3) at ¶ 11.) The defense theorized that Officer Blackman later gained possession of Fobbs' gun and used it as a "drop gun" on Brown. (Plaintiff's 56.1(a)(3) at ¶ 11.)

The court also limited defense questioning regarding an incident in which Officer Blackman and his partner, Officer Aaron Long, formerly a defendant in this case, were accused of switching price tags at a department store. (Plaintiff's 56.1(a)(3) at ¶¶ 14, 15.) In closing argument, the prosecutor argued that the defense had "come up with a concocted conspiracy theory" so that "they can continue with their civil suit and cash in on this case." (Plaintiff's 56.1(a)(3) at ¶ 75.) The court overruled the defense's objection to the statement. (Plaintiff's 56.1(a)(3) at ¶ 76.)

Brown was convicted of all counts and the Illinois Appellate Court affirmed Brown's conviction. (DZ 6, 7.) The Illinois Supreme Court denied Brown leave to appeal. (Plaintiff's 56.1(a)(3) at ¶ 9.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving

3

party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

Blackman advances three grounds for summary judgment. First Blackman argues that Brown's claims are barred by the doctrine of collateral estoppel. Second, Blackman argues that he is entitled to qualified immunity. Third, Blackman argues that any recovery by Brown would invalidate his state court conviction, violating the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (*Heck*).

Taking these arguments in reverse order, the Court has already rejected the argument that *Heck* bars Brown's suit. That argument will not be reconsidered here. Blackman also argues he

4

is entitled to qualified immunity because his actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Blackman argues that he was justified in using deadly force when faced with Brown pointing a gun at him. Blackman's argument is clearly contingent on acceptance of his version of events, i.e. that Brown was armed at the time of the shooting. It is thus contingent on his collateral estoppel argument discussed below.

Turning to the collateral estoppel argument, Brown's claim of excessive force is based on his allegation that he was unarmed and, thus, not a threat to Blackman at the time Brown was shot. Blackman argues that this issue, whether or not Brown was armed at the time of the shooting, has already been resolved against Brown at the criminal trial. Brown's conviction on the counts related to unlawful use of a weapon necessarily indicates that the jury found that Brown was armed. Therefore, Blackman argues, Brown is precluded from relitigating the issue before this Court.

Both parties agree that Illinois estoppel law applies in this case. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state court judgment). Under Illinois law, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the issue decided in the prior adjudication must be identical with the one presented in the suit in question; (2) there must have been a final judgment on the merits in the prior adjudication; (3) the party against whom estoppel is asserted must have been a party or in

privity with a party to the prior adjudication; and (4) the party sought to be bound must actually have litigated the issue in the first suit, and a decision on the issue must have been necessary to the judgment in the first litigation. *American Family Mut. Ins. Co. v. Savickas*, 193 Ill.2d 378, 387 (2000).

Both parties agree that the four elements necessary to apply collateral estoppel are met with respect to this issue. However, Brown argues that the Court should nonetheless not apply the doctrine because (1) Brown did not have a full and fair opportunity to litigate and (2) new facts have emerged since Brown's trial that would make it unfair to apply collateral estoppel.

Collateral estoppel cannot be applied to a party that "did not have a full and fair opportunity to litigate the issue in the earlier proceeding." *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986) (*Kunzelman*) (citing *Kremer v. Chemical Construction Co.*, 456 U.S. 461, 481 n. 22 (1982) (*Kremer*)). [W]hen a federal court has serious doubts about the fairness, quality or extensiveness of the earlier state court proceedings, it will not apply collateral estoppel. *Kunzelman*, 799 F.2d at 1176. However, "to qualify for full faith and credit, state proceedings need only satisfy the minimum procedural requirements of due process." *Kunzelman*, 799 F.2d at 1177 (citing *Kremer*, 456 U.S. at 481).

Brown bases his contention that he did not have a full and fair opportunity to litigate on three aspects of his criminal trial. First, the court prevented Brown from fully cross-examining Officer Fobbs. Brown claims that he could have presented evidence showing that Fobbs lied to investigators about the 1998 incident during which Fobbs claimed his gun was stolen. Second, Brown was prevented from introducing evidence that Officers Blackman and Long conspired to

switch price tags on merchandise at a department store. Third, the court permitted the prosecutor to argue that Brown and his attorney had "concocted" a conspiracy theory to allow them to "cash in" in a civil suit against the police officers.

None of these alleged defects in the criminal trial denied Brown of a full and fair opportunity to litigate. Brown's first two objections deal with limitations placed on his defense counsel's ability to cross-examine witnesses. However, "the latitude permitted on cross-examination is a matter within the sound discretion of the trial court, and a reviewing court should not interfere unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant." *People v. Kliner*, 185 Ill.2d 81, 130 (1998). With respect to the cross-examination of Officer Fobbs, the Illinois Appellate Court held that the limits imposed on the questioning regarding the 1998 robbery of the gun were not an abuse of discretion due to the speculative nature of the evidence. Likewise, with respect to the department store incident, the Illinois Appellate Court held that the trial court had allowed the defense to present the jury with adequate information bearing on the credibility of the officers. Overall, the limits on the cross-examination imposed by the trial court did not rise to the level that would deprive Brown of a full and fair opportunity to litigate. Likewise, the Illinois Appellate Court ruled that the prosecutor's comments in his closing statement to the effect that Brown was looking to "cash in," though improper, were not serious enough to deprive Brown of a full and fair opportunity to litigate.

Brown next argues that collateral estoppel should not apply because new facts have emerged since his criminal trial. Brown argues that new evidence reveals (1) that one of the witnesses against Brown, Jeremiah Brooks, admitted to police that he was selling drugs

immediately before the shooting, whereas he testified at trial that he was merely observing another witness sell drugs; and (2) that before the shooting, Blackman and Fobbs were assigned to duties that would likely have caused them to come in contact with each other, thereby supplying the nexus between them that the trial court held was lacking.

Brown argues that Brooks' trial testimony could have been biased because the police were not charging Brooks with selling drugs, supposedly in exchange for his testimony against Brown. However, Brown was in fact able to raise the inference of bias. Brooks was questioned about why he ran from police and his subsequent questioning at the police station. Brown's counsel implied at trial that Brooks was avoiding charges for selling drugs in exchange for his testimony against Brown. Thus, there is nothing new about this evidence that would defeat the application of collateral estoppel.

Brown also claims there is new evidence regarding the proximity of Blackman and Fobbs' assignments prior to the shooting. However, Brown has not shown why this information was unknown to him for reasons other than his failure to diligently discover it.

## CONCLUSION

Therefore, collateral estoppel applies and Brown's claims against Blackman are barred. For the reasons stated above, Defendant Blackman's motion for summary judgment is granted.

Dated: December 2, 2008

JOHN W. DARRAH
United States District Court Judge